IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JUDITH BAEZ**  **PLAINTIFF**

VS.  CIVIL ACTION NO.:_____

**WILLIAMS AND FUDGE, INC.;
EQUIFAX INFORMATION SERVICES, LLC;
TRANS UNION, LLC;
EXPERIAN INFORMATION SOLUTIONS, LLC;
AND JOHN DOES 1-10**   **DEFENDANTS**

## COMPLAINT – Jury Trial Demanded

COMES NOW, the Plaintiff, Judith Baez (hereinafter "Baez" or "the Plaintiff") by and through undersigned counsel and files this Complaint against the Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. (hereinafter "the FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (hereinafter "the FDCPA").

### Parties

1. Judith Baez is an adult resident of Jackson County, Mississippi, and is a "Consumer" as defined by both the FCRA and the FDCPA.

2. Williams and Fudge, Inc. ("WF" or "the Furnisher") is a South Carolina Corporation unregistered to conduct business within the state of Mississippi. It may be served thorough its registered agent, David C. Williams at 300 Chatham Ave. South Carolina, 29730.

3. WF uses the instrumentalities of interstate commerce to collect debts owed to other people and is a "debt collector" as that term is defined by the FDCPA.

4. In this instance, WF is a "furnisher" as defined by the FCRA.

5. Equifax Information Services, LLC ("Equifax") is a Georgia Limited Liability Company that may be served through its registered agent, Corporation Service Company at 7716 Old Canton Rd. Suite C. Madison, MS 39110.

6. Equifax is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

7. Trans Union, LLC ("TransUnion") is a Delaware corporation that may be served through its registered agent, The Prentice Hall Corporation System, Inc., at 7716 Old Canton Rd. Suite C. Madison, MS 39110.

8. TransUnion is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

9. Experian Information Solutions, LLC ("Experian") is a Ohio corporation that may be served through its registered agent, CT Corporation System, 645 Lakeland east Dr. Suite 101, Flowood, MS 39232.

10. Experian is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. §1681(f).

11. Throughout this Complaint, Experian, TransUnion, and Equifax are sometimes collectively referred to as "the Credit Reporting Agencies."

12. John Does 1-10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

**Jurisdiction and Venue**

13. This Court has jurisdiction pursuant to 15 U.S.C. §1681p and 28 U.S.C. §§1331, 1337 and 1367. This jurisdiction includes supplemental jurisdiction with respect to any pendent state law claims.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the Plaintiff's asserted claims.

**Facts**

15. Prior to October 18, 2022, Baez was informed that her consumer credit reports generated by each of the Credit Reporting Agencies contained information reportedly furnished by the U.S. Department of Education stating that her student loan accounts were "in collection".

16. Additionally, Baez was informed that her consumer credit reports generated by Equifax contained information reportedly furnished by WF stating that she owed money to WF and that her accounts with WF were "in collection".

17. Due to inaccurate and derogatory information on her consumer credit reports, Baez was subjected to higher interest rates for credit than she would have been if the derogatory information was not reported.

18. Due to inaccurate and derogatory information on her consumer credit reports, Baez was discouraged from applying for mortgage loans, auto loans, or other debt that would have allowed her to acquire equity in a home or automobile.

19. On or about October 18, 2022, Baez - through Counsel - sent letters to each of the Credit Reporting Agencies disputing various accounts on her consumer credit reports ("the Disputes"). Each of these reports and evidence of their mailing is attached as Exhibit A.

20. As it relates to the accounts reported by Equifax as owed to WF, the premise of the Disputes was that the accounts reported by WF were inaccurately reported because each of the accounts were extinguished under Mississippi law.

21. As it relates to the accounts reported by each of the Credit Reporting Agencies as owed to the U.S. Department of Education, the Disputes explained that the reporting of these various accounts as "in collection" was inaccurate in light of the Department of Education's forbearance on federal student loan collection beginning in February 2020[1].

22. The most recent Credit Reporting Resource Guide – a guide published by the Consumer Data Industry Association ("CDIA") provides that debts that are extinguished under state law should be reported as having a $0 balance and should have a Metro 2 Comment Code of DE- Debt Extinguished.

23. Upon receipt of the disputes by Baez, Equifax, Trans Union and Experian had a duty to conduct a reasonable investigation of the disputed information pursuant to 15 U.S.C. §1681i(a)(1).

24. Upon information and belief, the Credit Reporting Agencies each notified WF and the US Department of Education of the dispute as required by 15 U.S.C. §1681i(2).

25. Alternatively, TransUnion, Experian, or Equifax failed to notify either WF or the US Department of Education, or both of the disputes by Baez.

26. In response to Baez's disputes, Experian and TransUnion made no material changes to Baez's consumer reports.

27. Baez's Credit Reports for each of the Credit Reporting Agencies continue to report that the US Department of Education Accounts are "in collection" and that they have been "in collection" after the US Department of Education forbearance.

---

[1] The dispute states that the forbearance period was to end on December 31, 2022, but that deadline has been extended by the U.S. Department of Education to end after resolution of the litigation surrounding the Biden Administration's Student Debt Forgiveness Plan or by August 29, 2023 – whichever is later. *See*, COVID-19 EMERGENCY RELIEF AND FEDERAL STUDENT AID, available at: https://studentaid.gov/announcements-events/covid-19 (last visited December 21, 2022).

28. The fact that the US Department of Education announced that it would refrain from collection of its federal student loans was known to Experian at the time of Baez's dispute.

29. The fact that the US Department of Education announced that it would refrain from collection of its federal student loans was known to TransUnion at the time of Baez's dispute.

30. The fact that the US Department of Education announced that it would refrain from collection of its federal student loans was known to Equifax at the time of Baez's dispute.

31. TransUnion failed to conduct a reasonable investigation of Baez's dispute as it related to the US Department of Education accounts.

32. Experian failed to conduct a reasonable investigation of Baez's dispute as it related to the US Department of Education accounts.

33. Equifax failed to conduct a reasonable investigation of Baez's dispute as it related to the US Department of Education accounts.

34. Under Mississippi law, the statute of limitations expired as to each of the accounts reported by WF.

35. There were no written acknowledgments of any of the debts within three years prior to the disputes.

36. There were no transactions with regard to any of the debts within three years prior to the disputes.

37. Under Mississippi Code §15-1-3, the expiration of a statute of limitations extinguishes the right as well as the remedy regarding debt.  It is well established that the statute of limitations in this state is not merely an affirmative defense, instead the debt is "extinguished" once the statute has run. *Greene v. Greene*, 145 Miss. 87, 110 So. 218, 222-

23 (Miss. 1926). "[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation . . . ." Id. at 223; see also, H*awkins v. S. Pipe & Supply Co.*, 259 So. 2d 696, 697 (Miss. 1972); *Proctor v. Hart*, 72 Miss. 288, 16 So. 595, 596 (Miss. 1894). The Supreme Court of the United State has even noted the unique effect of Miss. Code §15-1-3 compared to other states. *See, Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017) (noting "expiration of the limitations period extinguishes the remedy and the right.").

38. Accordingly, as stated in the dispute letters sent by Baez's attorney, the reported information was inaccurate balance of the debt should have been reported as $0. "[T]he account ceases to be a debt. It is completely extinguished by the statute of limitation . . . ." *Greene v. Greene*, 145 Miss. 87, 110 So. 218, 222-23 (Miss. 1926).[2]

39. The reporting of the WF account should also have featured a DE – Debt Extinguished Comment Code pursuant to credit reporting guidelines designed to ensure maximum accuracy of consumer credit reporting.[3]

40. Correcting this information to comply Baez's dispute would not prevent the Equifax and WF from reporting accurate information regarding past delinquencies, instead the dispute was narrowly tailored to correct the inaccurate information about the collection status and current balance due.

---

[2] See i.e. *Strohbehn v. Access Grp. Inc.*, 292 F. Supp. 3d 819, 832 (E.D. Wis. 2017)(holding that a Debt Collector's credit reporting was directed at non-existent debts".  Wisconsin and Mississippi are the only two states in which the expiration of a statute of limitations extinguishes the right and the remedy associated with a debt. *See, i.e. Pantoja v. Portfolio Recovery Assocs., LLC,* 852 F.3d 679, 684 (7th Cir. 2017) (discussing Wisconsin's statute of limitations which has been described by the United States Supreme Court as the same. *See, Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1412 (2017)).

[3] The DE- Debt Extinguished Comment Code was established after a 2016 settlement between the Mississippi Attorney General, TransUnion, Equifax, and Experian that required each of the Credit Reporting Agencies to work with the Credit Data Industry Association to establish a more accurate way to report debts extinguished pursuant to laws like Mississippi Code §15-3-1.

41. The information furnished by WF to Equifax show that the debts are each over three years in age and that no payments were made within the past three years.

42. The reported information by WF to the Credit Reporting Agencies coupled with the information provided by the Plaintiff's disputes was sufficient for the Credit Reporting Agencies to conclude that the debts were extinguished by state law and that the reporting by the WF was inaccurate.

43. Upon receipt of the disputes by Baez's attorney, the Credit Reporting Agencies had a duty to conduct a reasonable investigation to determine the accuracy of the disputed account pursuant to 15 U.S.C. §1681i(a)(1).

44. Equifax, Trans Union and Experian failed to perform a reasonable reinvestigation of the disputes.

45. Following the disputes, each of the Credit Reporting Agencies continue to report the inaccurate information that was subject of the dispute.

46. None of the disputed information was corrected by WF or the Credit Reporting Agencies to be accurate.

47. Accordingly, the Credit Reporting Agencies failed in their obligations under 15 U.S.C §1681i to conduct a reasonable investigation into the disputes and to correct the inaccurate information pursuant to said investigation.

48. 15 U.S.C. §1681s-2(b)(1) provides that after a Furnisher receives a credit reporting dispute from a Credit Reporting Agency, they shall perform the following steps:

    (A) conduct an investigation with respect to the disputed information;
    (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
    (C) report the results of the investigation to the consumer reporting agency;

  (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
  (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
   (i) modify that item of information;
   (ii) delete that item of information; or
   (iii) permanently block the reporting of that item of information.

49. A reasonable investigation of the disputed information would have revealed that the reported information was inaccurate as stated in Baez's disputes.

50. WF failed to update the inaccurate information that it furnished to the Credit Reporting Agencies.

51. Because of the Defendant's actions, Plaintiff has suffered actual damages including postage, attorneys' fees, and has been subjected to higher interest rates and denials of credit.

52. Despite numerous opportunities to verify the debt and correct its errors prior to the filing of this Complaint, the Credit Reporting Agencies and WF have failed to update and properly report the above accounts.

53. As a result, Baez was forced to retain a counsel to address these issues and ultimately file this complaint.

54. WF failed to conduct a reasonable investigation pursuant to the Fair Credit Reporting Act. If it had done so, they would have furnished information showing a $0.00 balance and that the purported debt was extinguished.

55. Equifax failed to conduct reasonable reinvestigation regarding the information furnished by WF. There was sufficient information between the information provided by WF and

the information provided by Baez's disputes to allow Equifax to conclude that the debts to WF should have been reported as having a $0 balance and a DE- Debt Extinguished Metro 2 Comment Code.

56. The Credit Reporting Agencies and WF failed to follow the procedures that Congress laid out in the FCRA regarding disputed information and further failed to abide by the CDIA Credit Reporting Resource Guide.

57. WF continues to furnish information that is wrong and negatively impacting Baez's credit.

58. The Credit Reporting Agencies continue to report false and derogatory information regarding Baez's debt to the US Department of Education and to WF.

59. Equifax does not include a statement on its consumer reports that Baez disputes the information reported regarding the debt to the US Department of Education or to WF.

60. Experian does not include a statement on its consumer reports that Baez disputes the information reported regarding the debt to the US Department of Education.

61. TransUnion does not include a statement on its consumer reports that Baez disputes the information reported regarding the debt to the US Department of Education.

62. This negative information is false and misleading.

63. As a result of this negative information on her Consumer Reports, Baez has experienced a lower credit rating which impacts her ability to obtain credit or financing.

64. Specifically, Baez applied for credit and was subjected to higher interest rates due to her low credit rating.

65. Baez has incurred monetary damages in the form of postage and attorneys' fees in her attempts to have the Credit Reporting Agencies update the false and derogatory information on her reports.

66. Baez has suffered additional economic damage from the denial of credit opportunities and the increased cost of credit due to the reporting of this information by the Credit Reporting Agencies.

67. Baez has suffered emotional distress from the mental and emotional impact of having a low credit rating due to the actions of the Credit Reporting Agencies and WF in the reporting and furnishing of false and derogatory credit information.

### Count I: WF Violated the Fair Credit Reporting Act

68. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

69. WF furnished negative information regarding Baez to Equifax.

70. §1681s-2(a)(1) of the FCRA prohibits the furnishing of erroneous information to Credit Reporting Agencies if the Furnisher knows or has reason to know that the information is inaccurate.

71. §1681s-2(a)(2) of the FCRA requires Furnishers of information to Credit Reporting Agencies to promptly notify Credit Reporting Agencies if they determine that information they have provided is not complete or accurate.

72. §1681s-2(b) of the FCRA requires Furnishers of information to Credit Reporting Agencies to conduct an investigation in accordance with the terms of §1681i(a)(1) when the Furnisher receives a notice of dispute from a Credit Reporting Agency and to report the results of that investigation to the Credit Reporting Agency.

73. Plaintiff through counsel disputed with Equifax the negative reporting of account(s) and counsel thoroughly explained why the account(s) were wrongly reported under Mississippi law.

74. This dispute contained all relevant information regarding the dispute including that the accounts must show a $0 balance and should have a DE – Debt Extinguished Metro 2 Comment Code.

75. WF received notification of the dispute.

76. WF failed to conduct a meaningful investigation when they received notice of the dispute.

77. WF responded to the dispute in a manner that left the derogatory account information on Baez's Credit Reports.

78. The negative information continues to be reported.

79. As a result of the dispute, WF knew or should have known that the information it furnished to Equifax was inaccurate.

80. If WF had conducted a meaningful investigation of the Baez's credit reporting dispute, there would be no outstanding balance reported.

81. Accordingly, WF violated §1681s-2(b) of the FCRA with respect to Baez.

82. Baez has suffered actual financial damages as a result of WF's violations of the FCRA.

83. WF's actions were willfully noncompliant with their duties under §1681s-2(b) to conduct a meaningful investigation upon notification of a credit reporting dispute and to modify incorrect information.

84. Baez has suffered emotional distress as a result of WF's violations of the FCRA.

85. As a result of this negative information on her Consumer Reports, Baez has experienced a lower credit rating which impacts her ability to obtain credit or financing.

86. Because of WF's willful violations of §1681s-2(b) of the FCRA, Baez is entitled to statutory damages of $1,000.00 for each violation, as well as actual damages, punitive damages, and attorneys' fees pursuant to 15 U.S.C. §1681n.

87. In the alternative, because of WF's negligent violations of the FCRA, Baez is entitled to actual damages, and attorneys' fees pursuant to 15 U.S.C. §1681o.

### Count II: WF violated the Fair Debt Collection Practices Act

88. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

89. WF uses the instrumentalities of interstate commerce in its business, the principal purpose of which is the collection of debts.

90. WF is a "debt collector" as defined by 15 U.S.C. §1692a.

91. Baez is natural person allegedly obligated to pay debts to WF or to its clients.

92. Each of the accounts reported by WF is a "Debt" as defined by §1692a(4) of the FDCPA as it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

93. The reporting of a debt to Equifax by WF is an attempt to collect that debt.

94. Because the debt(s) are over 3 years old, the right and remedy has been extinguished and therefore any furnishing of information on those accounts that does not state the balance as $0 or includes "in collections" or "past due" is a false representation under 15 U.S.C. § 1692e.

95. Because the debt(s) is beyond the statute of limitations, the reporting of the debt(s) by WF as "in collections", a balance of more than $0, and or being "past due" is a false representation regarding the amount, character, and legal status of the debt(s).

96. The actions of WF in falsely representing the character, amount, and legal status of this debt are in violation of §1692e(2) of the FDCPA.

97. WF violated §1692d of the FDCPA by engaging in conduct the natural consequences of which was to harass, oppress, or abuse any person in connection with the collection of a debt. Specifically, WF's actions in reporting the debt(s) and debt status that it knew or had reasonable cause to believe was inaccurate violated the FCRA 15 U.S.C. §1681s-2(a) and the rights of the Plaintiff.

98. Baez has suffered actual financial damages as a result of WF's violations of the FDCPA including costs associated with certified mail, postage, and attorneys' fees.

99. As a result of this negative information on his Consumer Reports, Baez has experienced a lower credit rating which impacts her ability to obtain credit or financing.

100. Baez suffered emotional distress as a result of the violations of the FDCPA by WF.

101. As a result of the above violation of the FDCPA, WF is liable to Baez for actual damages, statutory damages up to $1,000.00, and attorney's fees pursuant to 15 U.S.C. §1692k.

**Count III: As to Defendants: TransUnion, Experian, and Equifax**
**The Credit Reporting Agencies Violated the Fair Credit Reporting Act.**

102. All of the foregoing paragraphs are realleged and incorporated herein by this reference.

103. 15 U.S.C. §1681i(a)(5)(B)(ii) requires a Credit Reporting Agency to provide notice to a consumer if previously deleted information is later reinserted into the consumer's file.

104. 15 U.S.C. §1681i(a)(1) provides that upon notification of a dispute to the accuracy of information contained in a Consumer Report, that the Consumer Reporting Agency will "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

105. Baez through counsel initiated a dispute with the Credit Reporting Agencies regarding the reporting of her accounts with the US Department of Education being reported as "in collection."

106. Baez - through counsel - initiated a dispute with the Credit Reporting Agencies regarding the reporting of her accounts with the US Department of Education being reported as "in collection."

107. Upon initiation of the dispute, the Credit Reporting Agencies had a duty to conduct a reasonable investigation into the purported debt.

108. A reasonable investigation would have revealed to Equifax that the debt to WF was actually beyond the three-year statute of limitations and thus could not be reported as more than a $0 balance, and that the DE- Debt Extinguished Metro 2 Comment Code should be utilized along with the reporting.

109. TransUnion, Equifax, and Experian further failed to verify the accuracy of the information furnished by the US Department of Education, even though the student loan forbearance for federal loans beginning in February 2020 was widely publicized.

110. The negative information continues to be reported.

111. Accordingly, the Credit Reporting Agencies violated 15 U.S.C. §1681i with respect to Baez by failing to conduct a reasonable investigation into Baez's disputes.

112. Each of the three Credit Reporting Agencies have failed to follow reasonable procedures to ensure maximum possible accuracy of Baez's consumer reports as required by 15 U.S.C. §1681e.

113. Baez has suffered actual financial damages as a result of the Credit Reporting Agencies violations of the FCRA.

114. The Credit Reporting Agencies actions were willfully noncompliant with their duties under §1681i to conduct a meaningful investigation upon notification of a credit reporting dispute and to modify incorrect information.

115. Baez has suffered emotional distress as a result of the Credit Reporting Agencies' violations of the FCRA.

116. As a result of this negative information on his Consumer Reports, Baez has experienced a lower credit rating which impacts his ability to obtain credit or financing.

117. Because of the Credit Reporting Agencies' willful violations of the FCRA, Baez is entitled to statutory damages of $1,000.00 for each violation, as well as actual damages, punitive damages, and attorneys' fees pursuant to 15 U.S.C. §1681n.

118. In the alternative, because of the Credit Reporting Agencies' negligent violations of the FCRA, Baez is entitled to actual damages, and attorneys' fees pursuant to 15 U.S.C. §1681o.

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

   A. That the Plaintiff recover against WF, TransUnion, Experian, and Equifax a sum to be determined by the Court in the form of actual damages for Defendants' violations of the FCRA.

   B. That the Plaintiff recover against WF, TransUnion, Experian, and Equifax $1,000.00 in the form of statutory damages for each of the Defendants' violations of the FCRA.

   C. That the Plaintiff recover against WF, TransUnion, Experian, and Equifax a sum to be determined by the Court in the form of actual damages awardable under the FCRA;

   D. That the Plaintiff recover against WF $1,000 in statutory damages for their violations of the FDCPA;

E. That the Plaintiff recover against all of the Defendants, jointly and severally, all reasonable legal fees and expenses incurred by their attorney as authorized under the FCRA; and

F. That the Plaintiff have such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully Submitted,

Judith Baez

By Counsel: /s/Michael T. Ramsey
Michael T. Ramsey, MSB #104978
SHEEHAN & RAMSEY, PLLC
429 Porter Avenue
Ocean Springs, MS 39564
MS Bar No. 104978
(228) 875-0572 Fax: (228) 875-0895
Mike@sheehanramsey.com